UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **CLIFFORD OSBORNE ET AL** | **CASE NO. 3:20-CV-00208** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **KEVIN BELTON** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM RULING**

Pending before the Court is a Motion for Summary Judgment [Doc. No. 48] filed by Plaintiffs Deborah and Clifford Osborne ("Mr. Osborne") (collectively "Plaintiffs"). The Motion is unopposed.

For the following reasons, the Motion is **GRANTED.**

**I.     BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs filed a Complaint[1] in this Court on February 17, 2020, alleging that Defendant Kevin Belton ("Belton") violated the Fair Housing Act ("FHA") and the Louisiana Equal Housing Opportunity Act. Specifically, Mr. Osborne argues that Belton discriminated against him on the basis of his disability by his refusal to allow Mr. Osborne's emotional support dog to "stay with" Plaintiffs at the property they leased from Belton.[2] Plaintiffs also asserts that Belton retaliated against them for exercising their rights under the FHA and the Louisiana Equal Housing Opportunity Act by evicting Mr. Osborne and his dog from the property at issue.[3]

On March 7, 2018, Mr. Osborne entered into a lease with Belton for the property at 223 Talbot Street in Jonseboro, Louisiana.[4] According to Mr. Osborne, during the time he was signing

---

[1] [Doc. No. 1]
[2] [Doc. No. 48]
[3] [Id.]
[4] [Id.]

the lease, he informed Belton that he had a disability and kept a dog as an assistance animal.[5] Mr. Osborne states that Belton had no problem with Mr. Osborne keeping the dog on the property.[6]

Then, approximately one month later, Mr. Osborne asserts that Belton told him he could no longer keep the dog at the property, but he could keep the dog in a neighboring yard.[7] Mr. Osborne states that as a result of this, his disability worsened, and he was required to frequently visit his dog at the neighboring property. Specifically, "he had to periodically visit his dog in order to manage his symptoms."[8] Some time after this, though, Mr. Osborne alleges that Belton "forcibly" removed his dog from the property and relocated it to a neighboring town.[9]

In an effort to have his dog on his property, Osborne's physician wrote a letter on September 11, 2018, attesting to Osborne's need to have his emotional support dog with him in order to properly take care of his disability.[10] Osborne attempted to show the letter to Belton on multiple occasions, but Belton allegedly refused to read it. Belton then filed a petition for eviction on October 1, 2018, and on October 4, 2018, Osborne was evicted on the basis of violating the no-pets policy.

After Osborne filed his Complaint, Belton failed to timely appear. Osborne then filed a Motion for Entry of Default against Kevin Belton.[11] The Clerk of Court entered default as to Belton on June 22, 2020.[12] On June 29, 2021, Osborne filed a Motion for Default Judgment[13] against Belton. Belton moved to set aside the default on July 21, 2021.[14] Belton's motion was granted on

---

[5] [Id.]
[6] [Id.]
[7] [Id.]
[8] [Id., p. 2]
[9] [Id.]
[10] [Doc. No. 13-2]
[11] [Doc. No. 10]
[12] [Doc. No. 11]
[13] [Doc. No. 13]
[14] [Doc. No. 18]

July 22, 2021.[15] Belton filed a Motion to Dismiss for Failure to State a Claim[16], and the Court denied that Motion.[17]

Osborne served Belton with requests for admission, requests for production of documents, and interrogatories on January 24, 2022. Belton failed to respond by February 23, 2022, as required by the Federal Rules of Civil Procedure. Belton responded on March 4, 2022. By this point, the Court determined that the requests for admission were automatically deemed admitted due to Belton's untimely response.

The discovery completion set for May 23, 2022, has since passed.[18] Discovery requests were to be served at least thirty days prior to the deadline to allow sufficient time for responses. Belton served discovery requests at 11:00 p.m. on May 23, 2022—the day of the discovery completion deadline. Plaintiffs objected to the requests in their entirety as untimely.

Plaintiffs now move for summary judgment on all claims against Defendant arguing that there are no genuine disputes of material fact, and that they are entitled to judgment as a matter of law.

The issues are briefed, and the Court is prepared to rule.

## II.  LAW AND ANALYSIS

### A. Law

Summary judgment shall [be] grant[ed] … if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(A). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in this case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[15] [Doc. No. 22]
[16] [Doc. Nos. 25, 26]
[17] [Doc. No. 35]
[18] [Doc. No. 39]

242, 248 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.

In deciding unopposed summary judgment motions, the Fifth Circuit has noted that a motion for summary judgment cannot be granted simply because there was no opposition. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 fn.3 (5th Cir. 1995). The movant has the burden to establish the absence of a genuine issue of material fact and, unless it has done so, the court may not grant the motion, irrespective of whether any response was filed. *Powell v. Delaney*, 2001 WL 1910556, at 5-6 (W.D. Tex. June 14, 2001). Nevertheless, if no response to the motion for summary judgment has been filed, the court may find as undisputed the statement of facts in the motion for summary judgment. *Id.* at 1 and n.2; see also *Thompson v. Eason*, 258 F. Supp. 2d 508, 515 (N.D. Tex. 2003) (where no opposition is filed, the nonmovant's unsworn pleadings are not competent summary judgment evidence and movant's evidence may be accepted as undisputed). See also: *UNUM Life Ins. Co. of America v. Long*, 227 F. Supp. 2d 609 (N.D. Tex. 2002) ("Although the court may not enter a 'default' summary judgment, it may accept evidence submitted by [movant] as undisputed."); *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex.)

("A summary judgment nonmovant who does not respond to the motion is relegated to his unsworn pleadings, which do not constitute summary judgment evidence.").

The court has no obligation to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

### B. Analysis

Plaintiffs assert three arguments for why summary judgment should be granted in their favor. The first is that Belton failed to timely respond to Plaintiffs' requests for admission, so he is deemed to have admitted those statements. The second is that Belton discriminated against Mr. Osborne by refusing to offer reasonable accommodations. The third is that Belton retaliated against Plaintiffs in violation of the FHA and the Louisiana Equal Housing Opportunity Act. Each of these arguments will be analyzed separately.

#### 1. Belton's Failure to Respond to Requests for Admission

Plaintiffs argue that because Belton failed to respond to the requests for admission before the February 23, 2022, deadline, then Belton is deemed to have admitted to the statements and is bound to them for purposes of summary judgment.

Federal Rule of Civil Procedure 36 allows a party to serve written requests for admission to an opposing party. FED. R. CIV. P. 36(a)(3) states:

> A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.

Courts have held that summary judgment is proper when a party fails to respond to requests for admissions under FRCP 36.[19] Under Rule 36(b), "Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission."[20]

Benton failed to make a motion for withdrawal or amendment of his admission. Further, he did not direct answers or object to the matter of the requests for admission within the proper thirty-day time period. If Benton had filed a response or opposition to Plaintiffs' Motion for Summary Judgment as to why he did not submit answers to the requests for admission within the thirty-day allotted time period, perhaps the Court would be more considerate. However, as Benton has not responded, and furthermore he is not *pro se*, the Court sees it reasonable that Benton is deemed to have admitted to the statements made in the requests for admissions and is bound by those statements.

Accordingly, Plaintiffs Motion for Summary Judgment on the fact that Belton's failure to timely respond to the requests for admissions causes them to be deemed admitted is **GRANTED**.

### 2. Belton's Alleged Discrimination against Mr. Osborne

Plaintiffs next assert that Belton discriminated against Mr. Osborne by refusing to make reasonable accommodations for his disability in violation of the FHA. The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap."[21] A landlord engages in unlawful discrimination under if the FHA if he or she refuses "to make reasonable accommodations in rules, policies, practices, or services, when such

---

[19] *Hulsey v. State of Tex.*, 929 F.2d 168 (5th Cir. 1991).
[20] Fed.R.Civ.P. 36(b); *see Dukes v. South Carolina Ins. Co.,* 770 F.2d 545, 548–49 (5th Cir.1985)
[21] 42 U.S.C. § 3604(f)(2)

accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."[22] Louisiana mirrors this statute in La. R.S. § 51:2606(A)(6)(c)(ii).

In order to establish a *prima facie* case against Belton for failure to accommodate his disability under the Section 3604(F)(3)(B) of the FHA, Mr. Osborne must have been able to show, at minimum, the following:

> (1) That he suffers from a disability within the meaning of 42 U.S.C. § 3602(h);
> (2) That the owner knew of his disability or reasonably should be expected to know of it;
> (3) That an accommodation may be necessary to give the resident an equal opportunity to use and enjoy the dwelling;
> (4) That the requested accommodation is reasonable; and
> (5) The owner refused to make the accommodation.[23]

Each of these will be analyzed individually.

### a. (1) Whether Osborne suffer from a disability within the meaning of 42 U.S.C. § 3602(h)

Title 42 U.S.C. § 3602(h) states:

> **(h)** "Handicap" means, with respect to a person--
> **(1)** a physical or mental impairment which substantially limits one or more of such person's major life activities,
> **(2)** a record of having such an impairment, or
> **(3)** being regarded as having such an impairment[.]

The ADA defines the term "disability" in the same way.[24] It is not enough for a party to simply state that he or she "has a disability."[25] Establishing a disability under both the FHA and ADA involves a three-step process.[26] First, the court determines whether the alleged condition is a

---

[22] 42 U.S.C. § 3604(F)(3)(B)
[23] *Overlook Mut. Homes, Inc. v. Spencer*, 666 F.Supp.2d 850, 855 (S.D.Ohio 2009), aff'd, 415 Fed.Appx. 617 (6th Cir.2011) (quoting *DuBois v. Assoc. of Apartment Owners of 2987 Kalakaua,* 453 F.3d 1175, 1179 (9th Cir.2006)).
[24] 42 U.S.C. § 12102(1)
[25] *Beaumont v. Exxon Corp.*, 02–2322, p. 12 (La.App. 4 Cir. 3/10/04), 868 So.2d 976, 983
[26] *Bragdon v. Abbott*, 524 U.S. 624, 631, 118 U.S. 2196, 141 L.Ed.2d 540 (1998)

physical or mental impairment.[27] Second, the court must determine whether the impairment affects major life activities.[28] Third, the court must find that the impairment placed a "substantial limit on the major life activity" asserted.[29] "Major life activity" is generally defined to include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," but is not limited to these tasks.[30]

Mr. Osborne asserts that he suffers from "developmental disabilities, as well as anxiety, depression, and panic attacks stemming from childhood trauma."[31] Mr. Osborne also attached a doctor's note to his motion. Dr. Dirk Rainwater ("Dr. Rainwater") described him in the note as "mentally challenged" and that he "suffers with anxiety and depression."[32] Mr. Osborne states that this disability/impairment affects major life activities because he has an inability to remain calm without the service of his emotional support animal. Mr. Osborne also argues that it is undeniable that he is disabled because Belton is deemed to have admitted that Mr. Osborne is a person with a disability. That logic is flawed. The inquiry of whether Mr. Osborne is disabled is with the Court, though, and not in Belton's perception.

The Court finds that Mr. Osborne does suffer from a mental impairment, that being developmental disabilities. The statute provides an exhaustive list of major life activities, including caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working, but it is not limited to only these. Mr. Osborne asserts that his impairment affects

---

[27] *Id.*
[28] *Id.*
[29] *Id.*, at 524
[30] 42 U.S.C. § 12102(2)(A).
[31] [Doc. No. 13-2, ¶ 2]
[32] [Doc. No. 48-5]

major life activities because he is unable to remain calm. The Court will determine for summary judgment purposes that Mr. Osborne is disabled.

### b. (2) Whether Belton knew of Mr. Osborne's disability or reasonably should be expected to know of it

Plaintiffs list a number of reasons explaining why Belton knew of Mr. Osborne's disability or reasonably should have been expected to know of it. The first is that Belton acknowledged at the October 4, 2018, eviction hearing that he had received the letter from Dr. Rainwater.[33] Belton's defense to seeing the letter was that it would not have mattered to him whether he had or had not seen the letter because he has issues with pets.

The Court only sees it necessary to analyze one of those reasons. Plaintiffs assert that by his failure to timely respond to requests for admission, Belton has admitted that Mr. Osborne "informed [Belton] of his disabilities, informed [Belton] that he keeps a dog as an assistance animal, and provided [Belton] with a note from Dr. Rainwater documenting Mr. Osborne's disabilities and his need for animal assistance."[34]

The Court finds that Belton's admissions alone satisfy this prong of the analysis.

### c. (3) Was the requested accommodation necessary to give Mr. Osborne an equal opportunity to use and enjoy the dwelling

Plaintiffs must now show that an accommodation was necessary to afford Mr. Osborne an equal opportunity to use and enjoy the dwelling. Courts have held that the "party claiming failure

---

[33] In reference to the Eviction Hearing, Plaintiffs Cite an Exhibit G Audio Tape Recording of Petition for Eviction of Clifford Osborne. No such exhibit exists in the record.
[34] [Doc. No. 48-4, ¶¶ 3-5, 8]

to accommodate under the FHA also bears the burden of showing that the requested accommodation is necessary."[35] The word necessity is often used in much the same manner as a causation requirement. Particularly:

> This requirement is divided into two considerations: is the accommodation necessary and will the accommodation afford equal opportunity to the disabled? In order for a requested accommodation to be necessary, the [aggrieved tenant] must show "a direct linkage between the proposed accommodation and the 'equal opportunity' to be provided to the handicapped person." If the requested accommodation "provides no direct amelioration of a disability's effect," it is not necessary. With respect to the "equal opportunity" requirement, the FHA "does not require accommodations that increase a benefit to a handicapped person above that provided to a nonhandicapped person with respect to matters unrelated to the handicap."[36]

Plaintiffs cite Dr. Rainwater's letter as confirmation that the emotional support animal is necessary for Mr. Osborne to have an equal opportunity to use and enjoy the property at issue. Further, Plaintiffs argue that the necessity of the emotional support animal is even more evinced by Mr. Osborne's reaction when Belton took the dog away from him. Mr. Osborne asserts that the removal of his dog only exaggerated his disability, and it caused him to be bed ridden and unable to sleep. He claims having a service animal "ameliorates" the effects of his anxiety and depression.[37]

The Court finds that Mr. Osborne's emotional support animal is necessary to give him an equal opportunity to use and enjoy the dwelling.

### d. (4) Whether Mr. Osborne's request to have an emotional support animal in the dwelling was reasonable.

---

[35] *Harmony Haus Westlake, LLC v. Parkstone Prop. Owners Ass'n, Inc.*, 440 F.Supp.3d 654, 664 (W.D. Tex. 2020)(citing *Elderhaven, Inc. v. City of Lubbock, Tex.*, 98 F.3d 175, 178 (5th Cir. 1996)); *Varrecchio v. Friends All. Hous. II, Inc.*, No. 18-8915, 2018 WL 6510740, at *2 (E.D. La. Dec. 11, 2018).
[36] *Bryant Woods Inn, Inc. v. Howard County, Md.*, 124 F.3d 597, 604 (4th Cir. 1997).
[37] [Doc. No. 48-2, p. 14]

"An accommodation is reasonable if it does not cause any undue hardship or fiscal or administrative burden."[38]  "[T]he types of animals that can qualify as reasonable accommodations under the FHA include emotional support animals, which need not be individually trained."[39]

The Court finds that Mr. Osborne's request to have his emotional support dog in the rental property was reasonable. There is no evidence provided to the contrary indicating whether the emotional support dog caused any undue hardship or fiscal or administrative burden on Belton.

### e.  (5) Did Belton refuse to make the accommodation?

It is uncontested that Belton refused to make the accommodation when he removed the emotional support dog from the property.

Accordingly, the Court finds that Plaintiffs have established a *prima facie* case against Belton for his failure to reasonably accommodate Mr. Osborn's disability. Therefore, the Motion for Summary Judgment is **GRANTED** on the reasonable accommodation claim.

### 3.  Retaliation Claims

Plaintiffs next claim asserts that Belton retaliated against Mr. Osborne in violation of the FHA and the Louisiana Equal Housing Opportunity Act. Title 42 U.S.C. § 3617 states:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

---

[38] *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 729 (1995)
[39] *Overlook Mut. Homes, Inc. v. Spencer*, 666 F. Supp.2d 859, at 861 (S.D. Ohio 2009)

The Louisiana Equal Housing Opportunity Act on retaliation is identical to the FHA language.[40] Retaliation claims brought pursuant to the FHA and the ADA are analyzed under the same standards used for analyzing retaliation claims brought pursuant to Title VII.[41] In order to establish a *prima facie* case of retaliation, the mover must show that "(1) he engaged in an activity that [the FHA] protects; (2) he was subjected to an adverse [action by the defendant]; and (3) a causal connection exists between the protected activity and the adverse ... action."[42] If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the challenged ... action."[43] A protected activity includes "oppos[ition] [to] any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."[44]

### a. *Prima Facie* case of Retaliation

Plaintiffs assert that Mr. Osborne satisfied the protected activity prong when he made a request on the basis of his disability. The Court agrees. The Court in *Harmony Haus Westlake* held "both requesting a reasonable accommodation and filing a lawsuit in pursuit thereof constitute protected activities."[45]

Plaintiffs have also established that Belton took an adverse action that is causally connected to the protected activities. Defendant even admitted to his actions by his failure to respond to the

---

[40] Louisiana Revised Statute 51:§2609
[41] *See Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1287 (11th Cir.1997); *see also Texas v. Crest Asset Management, Inc.,* 85 F.Supp.2d 722 (S.D.Tex.2000).
[42] *LeMaire v. Louisiana Department of Transportation & Development,* 480 F.3d 383, 388 (5th Cir.2007).
[43] *Grimes v. Texas Dept. of Mental Health & Mental Retardation,* 102 F.3d 137, 140 (5th Cir.1996).
[44] 42 U.S.C. § 12203(a)
[45] *Harmony Haus Westlake, LLC*, 468 F.Supp.3d 800, at 816; *see also Oxford House*, 932 F. Supp. 2d at 700 (citing *Gonzalez v. City of New York*, 354 F. Supp. 2d 327, 340 (S.D.N.Y. 2005) (filing lawsuit is a protected activity for a retaliation claim)); *Chavez v. Aber*, 122 F. Supp. 3d 581, 599 (W.D. Tex. 2015) (requesting reasonable accommodation is a protected activity for a retaliation claim).

request for admissions. There is no doubt, though, that Mr. Osborne complained of Belton's forcible taking of his emotional support animal, and then Belton's subsequent eviction action occurred shortly thereafter.

Plaintiffs have established a *prima facie* case of retaliation. Belton has not filed a response, and he, therefore, has established legitimate, nonretaliatory reasons for the adverse action. Accordingly, Plaintiffs' Motion for Summary Judgment on the basis of retaliation is **GRANTED**.

### III. CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Plaintiffs' Motion for Summary Judgment [Doc. No. 48] against Defendant Kevin Belton is hereby **GRANTED**.

MONROE, LOUSIANA, this 3rd day of August 2022.

_____
Terry A. Doughty
United States District Judge