**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **CLIFFORD OSBORNE ET AL** | **CASE NO. 3:20-CV-00208** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **KEVIN BELTON** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM RULING**

Pending before the Court is a Motion to Enforce Judgment [Doc. No. 52] (which the Court construes to be a motion for attorney's fees, costs, and damages) filed by Plaintiffs Clifford Osborne and Deborah Olsen ("Mr. Osborne" and/or collectively "Plaintiffs"). Defendant Kevin Belton ("Belton") has filed no response to the Motion.

For the following the reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs filed a Complaint[1] in this Court on February 17, 2020, alleging that Defendant Belton violated the Fair Housing Act ("FHA") and the Louisiana Equal Housing Opportunity Act. Specifically, Mr. Osborne argued that Belton discriminated against him on the basis of his disability by his refusal to allow Mr. Osborne's emotional support dog to "stay with" Plaintiffs at the property they leased from Belton.[2] Plaintiffs also asserted that Belton retaliated against them for exercising their rights under the FHA and the Louisiana Equal Housing Opportunity Act by evicting Mr. Osborne and his dog from the property at issue.[3]

---

[1] [Doc. No. 1]
[2] [Doc. No. 48]
[3] [Id.]

On March 7, 2018, Mr. Osborne entered into a lease with Belton for the property at 223 Talbot Street in Jonesboro, Louisiana.[4] According to Mr. Osborne, during the time he was signing the lease, he informed Belton that he had a disability and kept a dog as an assistance animal.[5] Mr. Osborne states that Belton had no problem with Mr. Osborne keeping the dog on the property.[6]

Then, approximately one month later, Mr. Osborne asserted that Belton told him he could no longer keep the dog at the property, but he could keep the dog in a neighboring yard.[7] Mr. Osborne stated that as a result of this, his disability worsened, and he was required to frequently visit his dog at the neighboring property. Specifically, "he had to periodically visit his dog in order to manage his symptoms."[8] Sometime after this, though, Mr. Osborne alleged that Belton "forcibly" removed his dog from the property and relocated it to a neighboring town.[9]

In an effort to have his dog on his property, Mr. Osborne's physician wrote a letter on September 11, 2018, attesting to Mr. Osborne's need to have his emotional support dog with him in order to properly take care of his disability.[10] Mr. Osborne attempted to show the letter to Belton on multiple occasions, but Belton allegedly refused to read it. Belton then filed a petition for eviction on October 1, 2018, and on October 4, 2018, Mr. Osborne was evicted on the basis of violating the no-pets policy.

After Mr. Osborne filed his Complaint, Belton failed to timely appear. Mr. Osborne then filed a Motion for Entry of Default against Belton.[11] The Clerk of Court entered default as to

---

[4] [Id.]
[5] [Id.]
[6] [Id.]
[7] [Id.]
[8] [Id., p. 2]
[9] [Id.]
[10] [Doc. No. 13-2]
[11] [Doc. No. 10]

Belton on June 22, 2020.[12] On June 29, 2021, Mr. Osborne filed a Motion for Default Judgment[13] against Belton. Belton moved to set aside the default on July 21, 2021.[14] Belton's motion was granted on July 22, 2021.[15] Belton filed a Motion to Dismiss for Failure to State a Claim,[16] and the Court denied that Motion.[17]

Mr. Osborne served Belton with requests for admission, requests for production of documents, and interrogatories on January 24, 2022. Belton failed to respond by February 23, 2022, as required by the Federal Rules of Civil Procedure. Belton responded on March 4, 2022. By this point, the Court determined that the requests for admission were automatically deemed admitted, due to Belton's untimely response.

The discovery completion set for May 23, 2022, has since passed.[18] Discovery requests were to be served at least thirty days prior to the deadline to allow sufficient time for responses. Belton served discovery requests at 11:00 p.m. on May 23, 2022—the day of the discovery completion deadline. Plaintiffs objected to the requests in their entirety as untimely.

Plaintiffs filed a Motion for Summary Judgment[19] on June 28, 2022. The Motion was unopposed. The Court granted[20] the Motion on August 3, 2022, and it found in favor of Plaintiffs. It also ordered that Plaintiffs file a motion to enforce the judgment against Belton with specific demands within thirty days of the Memorandum Ruling and Judgment. The instant Motion was filed timely.

---

[12] [Doc. No. 11]
[13] [Doc. No. 13]
[14] [Doc. No. 18]
[15] [Doc. No. 22]
[16] [Doc. Nos. 25, 26]
[17] [Doc. No. 35]
[18] [Doc. No. 39]
[19] [Doc. No. 48]
[20] [Doc. Nos. 50, 51]

## II. LAW AND ANALYSIS

### A. Calculating Attorney Fees

In the Fifth Circuit, the "lodestar" method is used to calculate reasonable attorney fees. *re: Fender*, 12. F.3d 480, 487 (5th Cir. 1994). In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714,19 (5th Cir. 1974), the Fifth Circuit identified twelve factors to be considered in determining an award of attorney fees.

Under the "lodestar" analysis, the determination of reasonable attorney fees involves a two-step procedure. *Louisiana Power & Light Company v. Kellstrom*, 50 F.2d 319, 324 (5th Cir. 1995). Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers. The court must multiply the reasonable hours by the reasonable hourly rates. The product is the "lodestar," which the court either accepts or adjusts upward or downward, depending on the circumstances of the case, assessing the twelve factors set forth in *Johnson.*, 488 F.2d at 717-19.

The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issue; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the awards in similar cases.

The applicant bears the burden of proving the reasonableness of the number of hours expended on their prevailing claim. *Leroy v. City of Houston*, 906 F.2d 1068, 1074 (5th Cir. 1990). Ultimately, the Court has discretion to fashion a reasonable attorney fee. *Hensley v.*

*Eckerhart*, 461 U.S. 424, 433 (1983). Attorney fees are recoverable when authorized by statute or contract. *F.D. Rich Co., Inc. v. U.S. For the Use of Industrial Lumber, Inc.*, 417 U.S. 116 (1974).

### 1. Analysis

Plaintiffs' requested amount of attorney's fees is $29,991.80. After reviewing the invoices, Affidavits, and records in this proceeding, the Court finds that the requested amount is reasonable given the time and scope of Plaintiffs' counsel's representation. In support of the fee, Plaintiffs asserted that the fee includes investigation of claims, interviewing, preparing, and serving the complaint, preparing, and serving discovery requests, and preparation of several motions. Plaintiffs also assert that the amount is reasonable because Plaintiffs achieved a "complete victory" of the case. *Farrar v. Hobby*, 506 U.S 103, 114 (1992). Plaintiffs calculated the attorney's fees pursuant to the Lodestar method employed by this Court.

For these reasons, the Court finds that Plaintiffs' request for attorney's fees is **GRANTED**, and Plaintiffs are to be awarded the sum of $29,991.80 in attorney's fees.

### B. Compensatory and Punitive Damages

Plaintiffs argue that if a court finds evidence of discriminatory violations under the FHA, then a plaintiff may seek compensatory and punitive damages, as well as injunctive relief. 42 U.S.C. § 3613. The Court has found evidence of discriminatory violations under the FHA.[21]

### 1. Compensatory Damages

Plaintiffs seek a reward of $50,000.00 in compensatory damages. In support of this, they provided to the Court evidence of both economic and emotional distress damages. The Court

---

[21] [Doc. Nos. 50, 51]

finds that Plaintiffs' request is reasonable and sees no reason why it should analyze this part of the Motion.

For these reasons, Plaintiffs' request for compensatory damages is **GRANTED**, and Plaintiffs are awarded $50,000.00 in compensatory damages.

### 2. Punitive Damages

Plaintiffs seek an award of $75,000.00 in punitive damages. Plaintiffs argue that they are entitled to punitive damages because of Belton's "egregious behavior and reckless and callous disregard of Plaintiffs' rights under the FHA" [Doc. No. 52-1, p. 11.]. Punitive damages are not awarded as a matter of right, and they are within the discretion of the trier of fact. *Parris v. Pappas*, 844 F. Supp. 2d 271 (D. Conn. 2012). In order for Plaintiffs to prevail on a claim for punitive damages in an FHA case, they must show that Belton acted with "malice or reckless indifference that [his] actions might violate a federal statute of which [he was] aware." *Lincoln v. Case,* 340 F.3d 283, 291 (5th Cir. 2003) (*quoting Preferred Properties*, Inc., 276 F.3d at 800 (6th Cir. 2002) (internal quotation marks omitted).

The Court agrees with Plaintiffs that Belton acted nefariously. However, the facts did not rise to the level to suggest that Belton acted so carelessly or with such malice that he was indifferent to the fact that he may have been violating a federal statute of which he was aware. The Court already granted summary judgment in favor of Plaintiffs against Belton. There were ample facts finding that Belton violated the Plaintiffs' rights under the FHA. What he did was reckless, but the Court does not find that Belton's reckless acts give rise to an award of punitive damages in the amount requested by Plaintiffs ($75,000.00).

Therefore, Plaintiffs' request for punitive damages in the amount of $75,000.00 is **DENIED**. The Court finds Plaintiffs are entitled to an award of $10,000.00 in punitive damages from Belton.

### III. CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Plaintiffs' Motion to Enforce Judgment [Doc. No. 52] is **GRANTED IN PART** and **DENIED IN PART**. To the extent that Plaintiffs' move to be granted an award of $29,991.80 in attorney's fees, the Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that to the extent Plaintiffs move to be granted an award of $50,000.00 in compensatory damages, the Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that to the extent Plaintiffs move to be granted an award of $75,000.00 in punitive damages, the Motion is **DENIED**. Plaintiffs are granted an award of $10,000.00 in punitive damages. Accordingly,

**IT IS ORDERED, ADJUDGED, AND DECREED** that there be judgment in favor of Plaintiffs, **CLIFFORD OSBORNE AND DEBORAH OLSEN** and against Defendant, **KEVIN BELTON**, in damages in the following amount:

| | |
|---|---|
| $29,991.80 | Attorney's Fees; |
| $50,000.00 | Compensatory Damages; |
| $10,000.00 | Punitive Damages; and |
| **$89,991.80** | **Total.** |

Monroe, Louisiana, this 29th day of September 2022.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT COURT

7